Ronald D. Roach (State Bar No. 022662)
**RDR LAW, PLC**
2550 W. Union Hills Dr., Ste. 350
Phoenix, Arizona 85027
Tel: 602.509.2417
ron.roach@rdrlawplc.com

*Attorney for Plaintiff/Judgment Creditor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| CHELSEY HANSEL, a single woman, | Case No.: 2:21-bk-00773-BKM |
| Plaintiff, | Chapter 7 |
| v. | Adversary No.: |
| ANDRE KEVON GUICE, a single man, AZ ELITE SPORTS & GYM, LLC, an Arizona limited liability company, and CHLORINE LIFE, LLC, an Arizona limited liability company dba AZ ELITE SPORTS, | **COMPLAINT TO DETERMINE DISCHARCHEABILITY OF DEBT PURSUANT TO 11 U.S.C. 523(A)(2)(A)** |
| Defendants. | |

Plaintiff Chelsey Hansel ("Hansel") brings this adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A) and (c), seeking an order determining that the judgment obtained by the Plaintiff against Defendant Andre Kevon Guice is excepted from discharge.

## PARTIES JURISDICTION & VENUE

1. Plaintiff Chelsey Hansel ("Hansel") is a single woman residing in Maricopa County, Arizona.

2. Defendant/Debtor Andre Kevon Guice ("Guice") is a single man and resides in Maricopa County, Arizona.

3. Chlorine Life, LLC is an Arizona limited liability company. Upon information and belief, Chlorine Life did business in the State of Arizona and Maricopa County as AZ Elite Sports. Guice is the sole member of Chlorine Life.

4. AZ Elite Sports & Gym, LLC is an Arizona limited liability company. Guice is the sole member of AZ Elite Sports & Gym.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.

6. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

7. Venue in the District of Arizona is proper under 28 U.S.C. § 1409(a).

8. This Adversary Proceeding relates to *In re Andre Kevon Guice*, No. 2:21-bk-00773-BKM, now pending in this Court (the "Bankruptcy Case"). Guice is the debtor in the Bankruptcy Case now pending before this Court.

9. Plaintiff holds a general unsecured claim against Debtor and his affiliated companies, Chlorine Life, LLC and AZ Elite Sports & Gym, LLC, pursuant to a Default Judgment (the "Default Judgment") entered in the Maricopa County Superior Court, case no. CV2018-001789, captioned as *Hansel v. Guice, et al*. A copy of the Default Judgment is attached and incorporated as **Exhibit 1**.

10. The Default Judgment includes monetary relief in favor of Plaintiff and against Debtor and his affiliated companies, jointly and severally, in the amount of $216,772.10.

**CONDUCT GIVING RISE TO THE NONDISCHARGEABLE DEBT**

11. Guice through his entities AZ Elite Sports & Gym and/or Chlorine Life, LLC owned and operated a gym located 3029 North Alma School Road in Chandler, Arizona 85224.

12. Plaintiff met Guice in 2016 and the two began a romantic relationship in March 2017.

13. Guice frequently spoke about the gym he owned at the time and represented that he had put over $1,000,000 of his own money into the business, boasted of his strong commitment to making the gym succeed, and represented that there was a significant pending insurance claim for which Guice would recover substantial sums arising from an alleged accidental breaking of a sprinkler head and resulting flood. Guice spoke highly of Hansel and commented how nice it was to be in the company of someone "of the same tax bracket that understood business."

### The May 2017 SoFi Loan

14. In April 2017, Guice asked Hansel to help him with one of the bills at the gym. The parties agreed that Hansel would lend Guice and the gym $9,000 and that she would be repaid the following week. Guice failed to repay the loan.

15. In May 2017, Defendant Guice convinced Hansel to help Guice and his gym with another, much larger, loan, purportedly to keep the gym open and help it catch up on missed rent payments to LA Fitness.

16. The parties agreed that Hansel would obtain a loan, $9,000 of which would be used to pay Hansel back for her April 2017 loan and an additional $54,000 would go to the gym and be repaid by the entity owning his gym, Chlorine Life, LLC, guaranteed personally by Guice.

17. In furtherance of the parties' agreement, on or about May 17, 2017, Hansel personally obtained a $65,000.00 loan from SoFi (the "May 2017 SoFi Loan").

18. To memorialize the parties' agreement, Guice caused a written "Loan Repayment Agreement" to be prepared that was executed by both parties on May 19, 2017.

19. In its entirety, the brief Loan Repayment Agreement states:

> Chelsey Hansel has accepted a loan from Sofi on May 17th 2017 in the amount of $65,000.00. This loan was taken out to assist Chlorine Life, LLC in keeping the business open and was requested by Andre Guice as the sole owner of Chlorine Life, LLC. Ms. Hansel agreed to this loan with the understanding that it is the responsibility of Chlorine Life, LLC to repay the loan. If for any reason Chlorine Life, LLC is unable to repay the loan, the full responsibility for loan repayment is then transferred to Andre Guice as an individual.

> Loan repayment will occur on the 4th of every month beginning July 4th, 2017 in the amount of $1,400 directly to Sofi. A receipt of payment will then be sent to Chelsey Hansel as confirmation of payment made.

Loan Repayment Agreement.

20. In each of July 2017, August 2017, September 2017, October 2017, and November 2017 Defendants made payments of $1,359.92 (not the $1,400.00 agreed upon).

21. In December 2017, Defendants' payment was returned due to insufficient funds and Hansel's account was charged $10.00 as a "non-sufficient fund fee for rejected ACH payment." A December payment of $1,359.92 was made a week later.

22. In February 2018, Defendants' payment was again rejected for insufficient funds and Hansel's account was against charged $10.00 as a "non-sufficient fund fee for rejected ACH payment." This time, no payment was ever resubmitted.

23. As of February 12, 2018, when Hansel initiated the underlying litigation, the outstanding principal balance on the May 2017 SoFi Loan to be repaid by Chlorine Life, LLC and/or Guice was $58,868.56 and accrued interest at a rate of 8.74% per annum.

### **The Purported Buy-In "Opportunity" and the Wells Fargo Loans**

24. In 2017, Guice proposed an "opportunity" for Andre Guice, Hansel to buy-in as a part owner of the gym.

25. Guice represented that he had never had a business partner and was willing to invest with Hansel. To induce Hansel to commit additional funds to Defendant Guice and the gym, Defendant Guice represented that her investment would benefit Hansel as well because the gym had been doing well.

26. In a further attempt to induce Hansel to commit additional funds to the gym and Guice, Guice showed her financial statements that purportedly represented and reflected the income coming into the gym from its members' monthly membership payments.

27. Guice represented that if Hansel gave him $200,000 in loans as a buy-in, she would be repaid and become a twenty percent (20%) owner of the business.

28. Hansel was interested in obtaining an ownership interest in the gym and obtained loans from Wells Fargo Bank in the amounts of $30,000 ($30,000 and $10,000 and $10,000, were obtained.

29. On each occasion, Guice accompanied Hansel to Wells Fargo and insisted that the loan proceeds be given to him in cash.

30. Guice made it very clear to Hansel that the gym would repay these loans in full.

31. Guice specifically represented that when the insurance claim was completed, he would "pay [his] mom back her $100,000 first and give you the rest of the money to pay you off."

32. Neither of Mr. Guice's entities nor Guice himself have repaid any proceeds he obtained from the Wells Fargo Loans.

## Guice Solicits Additional Loans from Hansel

33. Between April 2017 and February 2018, at Guice's request, multiple credit card transactions for the gym were run on Hansel's credit cards to keep the gym afloat and give the appearance that the gym was doing well.

34. Hansel also assisted Guice in changing his cell phone company purportedly for the gym business. Hansel was named as the financial guarantor of the account, but not identified as an authorized user on the account and, thus, has no access to it and cannot make any changes to the account.

35. Guice set up the account and obtained phones "for the business" when Hansel was not present.

36. Unbeknownst to Hansel, Guice obtained ten (10) phone lines that on the account and provided new phones for himself, Kim Nash (his gym manager and daughters' mother), Julie Evans (his personal assistant), Nyra (his mom), his sister, the gymnastics teacher at the gym, a male friend of his, and his friend's wife.

37. In January 2018, Hansel contacted the carrier to inquire about removing herself from the account, but because Hansel was not named as an authorized user, she cannot access the account at all.

38. Hansel demanded that Defendant Guice remove her as financial guarantor on the account, but to date, he has refused and failed to do so.

39. In addition to the 2017 SoFi loan and the Wells Fargo loans, Hansel has provided Guice and his entities with $54,971.03 in cash from Hansel's personal accounts.

40. On November 21, 2017, Guice received a list of all outstanding amounts and sums then due and owing to Hansel outside of the May 2017 SoFi Loan.

41. After reviewing the list of debts, Guice handwrote the following: "I certify that all these amounts are true. [T]otal of [$]134,971.03 is owed to Chelsey Hansel by Andre Guice and Chlorine Life, LLC." *Id.* This document was separate and apart from the SoFi Loan Repayment Agreement.

**Hansel Ends the Romantic and Business Relationship with Guice and the Gym**

42. Hansel subsequently learned that Guice had not filed taxes for the gym or personally for years.

43. Hansel did not want to be a part of a business that was not current and compliant with federal or state taxes.

44. Further, Guice once reviewed a purported bank statement for the gym with Hansel. The transactions reviewed included Guice's rent, his children's mother's rent, his mother's rent, groceries, McDonald's, Uber, and more, all of which were all being withdrawn from the business account.

45. Hansel engaged in similar conduct with his most recent business enterprise, Guice, PLLC, in which Guice used the company as his own piggy bank and paid undeniably personal expenses, including bicycles, electronics, and dating app membership fees.

46. Hansel was uncomfortable with these amounts taken from the company and expressed her concerns about this to Guice.

47. Hansel notified Guice that she had no interest in having any ownership in a company that was run this way financially, all of which were contrary to the representations Guice made to induce the loans from Hansel.

### The Lumber Liquidators Account

48. Although Hansel declined to be involved as an owner of the gym, she agreed to help with one last project with the gym – the installation of a basketball court.

49. Relying on Guice's promises that she would be repaid, Hansel opened an account with Lumber Liquidators to help purchase the flooring, which cost $2,000.

50. Although Guice represented that he would pay off the Lumber Liquidators account, Defendants have made only one payment of $100.

51. Guice subsequently indicated to Hansel that he will not go to Lumber Liquidators to pay them in person because he also owes them money that he did not intend to pay.

### The Home Depot Account

52. At some point in time, Guice obtained possession of Hansel's Home Depot Credit Card.

53. Hansel had to ask repeatedly for the card back. Finally, a few weeks later, Guice returned the card.

54. Hansel never personally used the card and was surprised to get a bill and see a balance on the card.

55. Hansel requested receipts revealing that the card had been used without permission by Guice and apparently three other people whose identities are presently unknown, all of whom forged her signature when using the card.

56. Hansel and his unknown associates ran up approximately $3,000 in unauthorized charges on Hansel's credit card before it was returned to her.

57. After severing her relationship with Guice, Hansel has learned that Defendant Guice has employed the same scheme in the past – promising a woman with whom he was in a romantic relationship an ownership interest in his company or companies in exchange

for substantial loans. A lawsuit filed by one such woman, Jaleh Keyhani, in the Maricopa County Superior Court (case no. CV2016-091600) and a claim from that debt is identified in Debtor's bankruptcy petition.

58. The Debtor's agreement in the Stipulated Judgment, along with the allegations in the Enforcement Action Complaint satisfy all of the elements necessary to establish a non-dischargeable fraud claim under 11 U.S.C. § 523(a)(2)(A).

## COUNT I

### (NONDISCHARGEABLE DEBT FOR MONIES OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS, OR ACTUAL FRAUD)

59. Hansel incorporates the preceding paragraphs as if fully set forth herein.

60. Guice made the false statements and material omissions to Hansel in connection with his efforts to induce Hansel to loan funds to him and his entities.

61. Specifically, in connection with each loan above, Guice promised to repay the loans, but had no intention of doing so at the time each of his promises were made.

62. Guice also made representations regarding the economic health of his businesses (including showing purported financial statements) and his business practices, that Hansel would be made an owner, that the gym would be recovering a substantial sum from an insurance claim.

63. The representations made by Guice on his own behalf and on behalf of his entities that the loans would be repaid in full and the ways in which he conducted business were material to the Hansel.

64. Guice's representations were false and misleading and constitute deceptive acts or practices in violation of Arizona law.

65. Guice made the representations knowing that they were false or with reckless disregard for the truth or falsity of the representations.

66. Hansel reasonably relied upon the material misrepresentations and omissions described above.

-8-

67. As a direct and proximate cause of Defendants' misrepresentations and material omissions, Hansel was and continues to be damaged in the amount set forth in the Default Judgment, $216,772.10 plus ongoing post-judgment interest (less $9,000 paid).

68. Consequently, Debtor's judgment debt to Plaintiff is one for money, property, or other services obtained by false pretense, false representations, or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

## **PRAYER FOR RELIEF**

Based on the foregoing, Hansel respectfully requests that this Court:

A. Determine that the Default Judgment against Debtor and his affiliated entities for fraud in the amount of $216,772.10 plus interest is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

B. Enter judgment against Debtor and his affiliated entities in the amount of $207,772.10 plus applicable interest in accordance with 28 U.S.C. § 1961; and

C. Grant such other and further relief as to the Court may deem just and proper.
.

Dated: May 10, 2021      **RDR LAW, PLC**

By Ronald D. Roach
RONALD D. ROACH
*Attorney for Plaintiff*

2550 W. Union Hills Dr., Ste. 350
Phoenix, Arizona 85027
ron.roach@rdrlawplc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2021, a true and correct copy of the foregoing document was served electronically via email to:

Kevin C. McCoy <kmccoy@kelly-mccoy.com>
Brian J. Mullen <bmullen@ecf.axosfs.com>
Brian J. Mullen <bmullen@bktrustee.phxcoxmail.com>

                                                    /s/ Ronald D. Roach